`

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DANIEL LOPEZ JR., | Case No. 2:24-CV-06403 CV (SKx) |
| Plaintiff, | **ORDER GRANTING RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| NLP, LLC, and NALS APARTMENT HOMES, LLC, | **[DOC. # 37]** |
| Defendants. | |

On June 9, 2025, Plaintiff filed a Renewed Motion for Preliminary Approval of Class Action Settlement (Doc. # 37, "Motion"). Defendants NLP, LLC and NALS Apartment Homes, LLC (collectively, "Defendants") filed no opposition. On July 11, 2025, the Court found the Motion appropriate for decision without oral argument and took the Motion under submission. Doc. # 40. Having considered the papers filed in support of the Motion, the Court GRANTS the Motion for preliminary approval as discussed below.

## I.    BACKGROUND

### A.    Factual and Procedural History

Plaintiff filed a class action complaint in Santa Barbara Superior Court on June 28, 2024. Doc. # 1-1 ("Compl.") at 2. Defendant removed this action on July 30, 2024. Doc. # 1.

Plaintiff's Complaint alleges that Defendants failed to properly safeguard his and other current and former employees' Personal Information (including their W-2 forms, containing their names, addresses, and social security numbers), which was allegedly posted on the Dark Web as a result of a cybersecurity incident identified on December 2, 2023 (referred to as the "Cybersecurity Incident" and the "Data Breach" in the complaint) *See generally*, Compl.

Plaintiff sought to represent "[a]ll individuals whose Sensitive Information stored or possessed by Defendants was subject to the Data Breach," (the "Class") and "[a]ll California residents whose Sensitive Information stored or possessed by Defendants was subject to the Data Breach." (the "California Subclass"). *Id*. at 66.[1]

Based on the foregoing, Plaintiff's Complaint alleges the following claims: (1) negligence (*id*. ¶¶ 74-93); (2) invasion of privacy (*id*. ¶¶ 94-104); (3) breach of implied contract (*id*. ¶¶ 105-14); (4) breach of fiduciary duty (*id*. ¶¶ 115-19); (5) breach of confidence (*id*. ¶¶ 120-31); (6) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. (*id*. ¶¶ 132-38); (7) violation of the California Customer Records Act ("CCRA"), Cal. Civ. Code 1798.150, et seq (*id*. ¶¶ 139-55). The first five causes of action are brought on behalf of Plaintiff and the Class, and the sixth and seventh causes of action are brought on behalf of Plaintiff and the California Subclass. *Ibid*.

---

[1] The Complaint defines "Sensitive Information" as the Personally Identifiable information provided to Defendants. Compl. ¶ 4.

On March 3, 2025, Plaintiff filed a Motion Preliminary Approval of Class Action Settlement. Doc. # 33. Defendants did not oppose this motion. On April 4, 2025, the Court held a hearing on this motion, discussed certain areas of concern for the Court with counsel, and denied the motion without prejudice. On May 9, 2025, the Court issued a minute order denying the motion without prejudice and describing areas of concern in writing. Doc. # 36.

On June 9, 2025, Plaintiff filed a Renewed Motion for Preliminary Approval of Class Action Settlement (Doc. # 37, "Motion"). Defendants did not oppose the Motion.

### B.   The Settlement

The proposed settlement agreement is attached to the Declaration of Benjamin Travis ("Travis Decl.") as Exhibit 1. Doc. # 37-3 ("Settlement"). The Settlement contains the following key provisions:

- **Settlement Class Definition:** The Settlement Class is defined as "current and former employees of Defendants who reside in the United States and whose information was impacted by the Cybersecurity Incident." Settlement ¶ 33. Excluded from the Settlement Class are (i) Defendants, their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Cybersecurity Incident or who pleads nolo contendere to any such charge. Settlement ¶ 71.

- **Settlement Fund**: The Parties negotiated a Settlement Fund of $435,000 ("Settlement Fund"). Settlement ¶¶ 38, 42–46. Cash payments to the Settlement Class, the costs of Credit Monitoring, reimbursement for out-of-pocket losses, notice and Claims Administration expenses, service award payments, and attorney fees and litigation costs and expenses will be deducted from the Settlement Fund. *Id.*

- **Distribution of Benefits**: All Settlement Class Members may submit a Claim Form[2] electing one or more of the following benefits: Cash Compensation; Credit Monitoring; and where applicable, compensation for Out-of-Pocket Losses. Settlement ¶ 47. Each Settlement Class Member is eligible to elect to receive Cash Compensation initially set at $50.00, subject to pro rata increase or reduction. *Id.* In addition to Cash Compensation, each Settlement Class Member is eligible to elect to receive twenty-four (24) months of credit monitoring services through one of the national credit reporting bureaus ("Credit Monitoring Services"). A Settlement Class Member may also seek reimbursement for Out-of-Pocket Losses up to a total of $2,000 per claimant. *Id.* If the total amount of valid claims for Out-of-Pocket Losses, Credit Monitoring Services, and Cash Compensation submitted during the Claims Period exceeds the amount of money available in the Settlement Fund, after payments for all other settlement costs have been accounted for, the amount of each valid claim for Out-of-Pocket Losses and Cash Compensation will be reduced proportionally. *Id.* ¶ 48. If the total amount of valid claims for Out-of-Pocket Losses, Credit Monitoring Services, and Cash Compensation submitted during the Claims Period is less than the amount of money remaining in the Settlement Fund after all other settlement costs have been accounted for, then the Settlement Administrator will increase on a pro rata basis payments of the remaining money in the Settlement fund to each Settlement Class Member that submitted a valid Cash Compensation claim. *Id.* ¶ 49.

---

[2] The Claim Form is attached to the Settlement as Exhibit D. This Claim Form must be submitted to the Settlement Administrator, postmarked or submitted electronically in accordance with the requirements for electronic submission of a Claim Form, on or before the Claims Deadline. Settlement ¶¶ 5, 17, 54.

- **Class Representative Service Award:** The Settlement contemplates Plaintiff's counsel filing a motion seeking up to $4,000 as a service award for Plaintiff's service as a Class Representative. Settlement ¶ 82. Defendants have agreed not to oppose a request that does not exceed $4,000. *Id*. This award is to be paid from the Settlement Fund. *Id*.

- **Attorney Fees:** The Settlement contemplates Class Counsel moving the Court for an award of attorney fees not to exceed 25% of the Settlement Fund plus litigation costs not to exceed $25,000. Settlement ¶¶ 52, 84. The finality or effectiveness of the Settlement shall not depend on the amount or timing of any Fee Award and Costs approved and awarded by the Court or any appeal thereof. Settlement ¶ 52, 85. Defendants have agreed not to oppose a request for attorney fees that do not exceed 25% of the Settlement Fund and reimbursement of costs and expenses not to exceed $25,000. Settlement ¶ 84.

- **Notice to Class Members:** The Settlement contemplates notice being provided to Settlement Class Members by the Settlement Administrator. Settlement ¶¶ 16, 32, 61–66, 69–70. This notice will provide Settlement Class Members with information about the lawsuit, the Final Approval Hearing (*id*. ¶ 73), the procedure for opting out of the settlement (*id*. ¶ 67), for objecting to the settlement (*id*. ¶ 68), how to submit a claim (*id*. ¶ 54), and how claims are processed (*id*. ¶ 55–60). The Settlement attaches templates of the various proposed notice forms, claims form, and exclusion form. Settlement, Exhs. A–J. Notice and Administrative Expenses, including the cost of Notice, are to be paid through the Settlement Fund and are limited to the Settlement Fund amount. Settlement ¶¶ 51, 64. Defendants will pay the cost of serving a CAFA Notice to be served upon appropriate State and Federal Officials separate from the Settlement Fund. Settlement ¶ 66.

- **Release Provisions**: As a condition of the Settlement, all members of the class release certain claims against the Defendants and other Released Parties. Settlement ¶¶ 27, 78–81. The Settlement defines "the Released Claims" as:

  > "any and all claims, liabilities, rights, demands, suits, actions, causes of action, obligations, damages, penalties, costs, attorneys' fees, losses, and remedies of every kind or description—whether known or unknown (including Unknown Claims[3]), existing or potential, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that relate to or arise from any of the facts alleged in the Class Action Complaint concerning the Cyber Security Incident, regardless of whether such claims arise under federal, state and/or local law, statute, ordinance, regulation, common law, or other sources of law."

Settlement ¶ 26.

## II.    PRELIMIMNARY APPROVAL OF SETTLEMENT

Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any class settlement. *See* Fed. R. Civ. P. 23(e). "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

When the parties reach a settlement agreement before class certification, district courts use a two-step process to approve a class-action settlement. Preliminary approval and conditional certification are the first step of the approval process. "To secure preliminary approval and condition[al] certification, the parties must provide sufficient information for the court to determine that it 'will likely be able to' grant final approval

---

[3] "Unknown Claims" is defined by the Settlement as "claims that could have been raised in the Action and that Plaintiffs, any member of the Settlement Class or any Releasing Party, do not know or suspect to exist, which, if known by him, here or it, might affect his, her or its decision to agree, object, or not object to the Settlement." Settlement ¶ 79. The Settlement includes an express waiver of Cal. Civ. Code § 1542. *Id*.

of the settlement under Rule 23(e)(2) and certify the class for a judgment on the settlement." *Lusk v. Five Guys Enterprises LLC* ("*Lusk II*"), 2021 WL 2210724, at *2 (E.D. Cal. June 1, 2021) (quoting Fed. R. Civ. P. 23(e)(1)(B)). The "settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

Pre-certification settlements demand "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair," however. *In re Bluetooth*, 654 F.3d at 946 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also Briseño*, 998 F.3d at 1027–28 ("The district court . . . should give a hard look at the settlement agreement to ensure that the parties have not colluded at class members' expense."). "This more 'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)). District courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Ultimately, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

Once a court preliminarily approves the settlement, the court "may direct appropriate notice to the class" and grant final approval "only after a hearing." Fed. R. Civ. P. 23(c)(2), (e)(2). With respect to a settlement of a class certified under Rule 23(b)(2), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

//

III.    DISCUSSION

A.    Class Certification

Under Rule 23(e)(1) (amended Dec. 1, 2018), the Court must direct notice of a class-action settlement to the class if parties have shown that the Court will likely be able to approve the settlement under Rule 23(e)(2) and certify the class for purposes of judgment on the proposal. When a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952-53 (9th Cir. 2003).

### 1. Rule 23(a) Requirements

Under Rule 23(a), the plaintiff must show the class is sufficiently numerous; there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of those of the class; and the representative parties will fairly and adequately protect the Class's interests.

#### a. Numerosity

A proposed class meets Rule 23(a)'s numerosity requirement where the class is so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). No exact numerical cut-off is required; rather, the specific facts of each case must be considered. *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *General Tel. Co. of Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). However, numerosity is presumed where the plaintiff class contains forty or more members. *Id.* (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); "A proposed class of at least forty members presumptively satisfies the numerosity requirement." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012) (citation omitted).

Here, it appears that the proposed class has met the numerosity requirement. The Motion states that "Defendants estimate that there are approximately 4,500 individuals in

the Settlement Class." Motion at 13. This number is more than sufficient to satisfy the numerosity requirement, although for final approval of the settlement, the parties must provide the Court with evidence supporting Defendants' estimate.[4]

### b. Commonality

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *see Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted). "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); *see Mazza*, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). *See Mazza*, 666 F.3d at 589; *Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see,*

---

[4] This requirement may be satisfied by a declaration stating the defendants' estimate from a defendant's officer or employee with personal knowledge of the records.

*e.g.*, *Hameed-Bolden v. Forever 21 Retail, Inc.*, No. 2:18-cv-03019 SJO (JPRx), 2019 WL 8953127, at *5 (C.D. Cal. Aug. 12, 2019) (finding commonality requirement met because the central question behind every claim was whether defendant adequately secured class members' payment card information).

That requirement is met here, as each Class Member seeks resolution of the same legal and factual issues, such as (1) whether Defendants properly monitored and protected Plaintiff's and the Class's PII; (2) whether Defendants adequately addressed and fixed vulnerabilities related to the Cybersecurity Incident; (3) whether Defendants failed to notify Class members that their Sensitive Information was compromised; (4) whether Defendants caused Plaintiff and the Class damages; and (5) whether Plaintiff and the Class are entitled to damages, injunctive relief, or other equitable relief and the measure of such damages and relief. *See* Compl. ¶ 70. The commonality requirement is therefore satisfied.

### c. Typicality

To satisfy the typicality criterion, the moving party must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "focuses on the relationship of facts and issues between the class and its representatives," *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 321 (N.D. Cal. 2013), to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "[C]lass certification should not be granted if 'there is a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to [him].'" *Alberto*, 252 F.R.D. at 662 (internal citations omitted).

Here, Plaintiff alleges that his PII was compromised and that he was impacted by the same allegedly inadequate data security that harmed the rest of the Class. Compl. ¶ 4. Accordingly, the typicality requirement is satisfied.

-10-

### d. Adequacy of Representation

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, Plaintiff claims neither they nor their counsel have conflicts of interest with other members of the Settlement Class. *See* Doc. # 33-1 at 9–10; Travis Decl. ¶ 27. The Court agrees. There is no indication that Plaintiff has any conflicts of interest with other Class Members because Plaintiff seeks the same relief as the Class Members. Furthermore, Plaintiff has "no separate and individual claims apart from those of the Class." *See Franco*, 2012 WL 5941801, at *6. Moreover, his counsel represents that Plaintiff "was not promised, nor conditioned his representation on the expectation of a service award." Travis Decl. ¶ 28. Similarly, Plaintiff's counsel "never discussed attorneys' fees and costs associated with the settlement until after they reached agreement on the amount of the settlement." *Id*. ¶ 10.

With respect to assessing the vigor with which Plaintiffs and Class Counsel will prosecute the Class's claims, "[t]he Ninth Circuit has held that, '[a]lthough there are no fixed standards by which vigor can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation.'" *Franco*, 2012 WL 5941891, at *7 (quoting *Hanlon*, 150 F.3d at 1021).

Plaintiff's counsel's declaration describes sufficient qualifications and prior experience to capably follow through on a vigorous prosecution of the Class's claims. *See* Travis Decl. ¶¶ 18–26; Declaration of Joshua Swigart In Support of Motion for Preliminary Approval of Class Action Settlement, Doc. 37-4 ("Swigart Decl.") ¶¶ 3–7.

Plaintiff's counsel's rationale for not pursuing further litigation is sound: counsel attests that he "stand[s] ready, willing and able to devote the resources necessary to litigate this case vigorously and see it through to an optimal resolution," has assessed the risks of pursuing further litigation, and has determined that the Settlement "represents an excellent result for the Settlement Class, and is in all respects fair, reasonable, and adequate." Travis Decl. ¶¶ 11, 17, 24. And although the Court has a limited record with which to assess Plaintiff and his counsel's vigor given the early settlement, it appears that the swift settlement is due in part to Plaintiff's counsel's tenacity in negotiating a settlement with Defendants and Plaintiff's cooperation throughout the process. *See id.* ¶¶ 7–10, 27–28. Plaintiff's counsel conducted "a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims, including investigation of the [Cybersecurity Incident] to determine Defendants' exposure and impact," (*id.* ¶ 8), obtained informal discovery from Defendants (*id.* ¶ 7)) and engaged in a "hard-fought" negotiation over several months that culminated in the Settlement at issue here (*id.* ¶ 7, 9). Throughout the process, Plaintiff reviewed and approved filings with the Court and has been communicative with his counsel; according to his counsel, "no recovery would have been possible without [Plaintiff's] critical role." *Id.* ¶ 27. In short, the Court has no reason to believe that Plaintiff and Class Counsel would not vigorously prosecute this action. The adequacy requirement is therefore satisfied.

The requirements imposed by Rule 23(a) are satisfied. The Court next considers whether additional requirements of Rule 23(b)(3) are met.

### 2. *Rule 23(b) Requirements*

Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes. Here, Plaintiff seeks certification under Rule 23(b)(3). Motion at 15. Rule 23(b)(3) allows certification where: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*,

-12-

571 F.3d 953, 957 (9th Cir. 2009). "Courts refer to the requirements of Rule 23(b)(3) as its 'predominance' and 'superiority' requirements." *Franco*, 2012 WL 5941801, at *8 (citing *Amchem*, 521 U.S. at 615).

### a. Predominance

Predominance requires "that the questions of law or fact common to all members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." *Alberto*, 252 F.R.D. at 663 (citing *Hanlon*, 150 F.3d at 1022; *Amchem*, 521 U.S. at 623); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. By contrast, when "claims require a fact-intensive, individual analysis," then class certification will "burden the court" and is inappropriate. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst.*, Inc., 253 F.3d 1180, 1189 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001) (citation and quotation marks omitted).

Here, Plaintiff and all Class members' claims depend on the common question of whether Defendants used reasonable data security measures to protect consumers' PII in relation to the same Cybersecurity Incident. A common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Since the question here can be resolved using the same evidence for all Class Members, a single adjudication is appropriate and thus, the predominance requirement is satisfied. *Id.*

*b. Superiority*

The superiority inquiry requires a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). In deciding whether a class action would be the superior method for resolving the controversy, courts consider several factors, including:

> (A) [T]he class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "Some of the Rule 23(b)(3) factors, namely (D) and perhaps (C), are irrelevant because the parties have agreed to a pre-certification settlement." *Alberto*, 252 F.R.D. at 664 (citing *Amchem*, 521 U.S. at 620). Here the first three factors favor certifying the proposed Class.

For the first factor, since this is a data breach case where individual recovery is likely to be much lower than the costs of litigating "complex technical issues" that could require "substantial expert testimony," it is unlikely that any individual class member would bear the risks and costs of litigating a separate action against Defendants. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316 (N.D. Cal. 2018), Thus, a class action is a more efficient means for each individual Member to pursue his or her claims. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Moreover, because the claims of all putative Class Members are virtually

-14-

identical, individual suits would require duplicative efforts. *See Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003) ("Here, no one member of the Class has an interest in controlling the prosecution of the action because the claims of all members of the Class are virtually identical.").

With respect to the second factor, there does not appear to be any other litigation currently or previously pending by any Class Member concerning similar claims to those at issue in this action. *See* Motion at 18.[5]

Finally, as to the third factor, it is desirable to concentrate litigation before this Court. Defendants' principal place of business is in Santa Barbara, California (Compl. ¶ 18), which supports litigation in this forum. *See In re Anthem, In. Data Breach Litigation*, 327 F.R.D. 299, 316 (N.D. Cal. 2018) (holding that since Defendant conducted substantial business in California maintained several offices in the state, it was desirable to concentrate litigation in that forum). Considering the presence of Defendants in California and the inclusion of a California sub-class, this Court is a proper forum for resolution of the action. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 495 (C.D. Cal. 2006) ("[B]ecause plaintiffs have alleged an overarching fraudulent scheme and include a California sub-class, it is desirable to consolidate the claims in this forum."). The superiority requirement is therefore satisfied for purposes of settlement.

\*\*\*

For the reasons discussed above, the Court concludes that certification of the proposed class is appropriate for purposes of settlement.

## B. Fairness, Adequacy, and Reasonableness of the Settlement

At the preliminary approval stage, the parties must show that "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B).

---

[5] To obtain final approval, Plaintiff must provide the Court with evidentiary support for this assertion.

Rule 23(e)(2) requires courts to determine whether the proposed settlement is "fair, reasonable, and adequate" based on consideration of whether:

>     (A) the class representatives and class counsel have adequately represented the class;

>     (B) the proposal was negotiated at arm's length;

>     (C) the relief provided for the class is adequate, taking into account:

>>          (i) the costs, risks, and delay of trial and appeal;

>>          (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>>          (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

>>          (iv) any agreement required to be identified under Rule 23(e)(3); and

>     (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6]

---

[6] Prior to the 2018 Amendments of Rule 23(e), the Ninth Circuit had developed its own list of factors to assess the fairness, adequacy, and reasonableness of a class action settlement: (1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views and experience of counsel; (8) any opposition by class members; (9) the presence of a governmental participant. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list"). "The Ninth Circuit has not directly spoken to how the 2018 amendments fit with this list of factors[.]" *Ott v. Cooper Interconnect, Inc.*, No. 2:23-CV-04501-SPG-JC, 2025 WL 1088081, at *7 (C.D. Cal. Mar. 13, 2025); *Gagnier v. Siteone Landscape Supply LLC*, No. SA CV 21-01834 CJC (DFMx), 2023 WL 8116831, at *6 (C.D. Cal. June 6, 2023) ("[T]he Ninth Circuit has not expressly addressed how the analysis may have changed with the 2018 amendments [but] the prior factors correlate with the new language of the rule."). The amendment to Rule 23(e)(2) was not meant "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. The Court thus considers the pre-2018 factors to the extent they shed light on the inquiry mandated by the amended Rule 23(e). *Ott*, 2025 WL 1088081, at *7; *Gagnier*, 2023 WL 8116831, at *6.

With respect to Rule 23(e)(2)(C)(iii), the Ninth Circuit asks district courts to undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations," regardless of "whether a settlement agreement has been negotiated before a class has been certified or after." *Westfall v. Ball Metal Beverage Container Corp.*, 2021 WL 4206851, at *4 (E.D. Cal. Sept. 16, 2021) (citing *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)). The purpose of scrutinizing the fee arrangement is to look for "potential collusion or unfairness to the class." *Briseño*, 998 F.3d at 1026. The Ninth Circuit instructs this Court to analyze three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *Id.* at 1026-27.

Lastly, the district court must approve or reject the entire settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The Court must remain cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### 1. *Adequacy of Representation by Class Representatives and Class Counsel*

The first factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). As the Court concluded with respect to the adequacy analysis under Rule 23(a), both the Class Representative Plaintiffs and Class Counsel do not have a conflict of interest and have demonstrated

their ability to vigorously prosecute this case by their diligence in investigating this matter, conducting informal discovery with Defendants, and negotiating the Settlement with Defendants. *See* Section III.A.1.d. above. The Court finds that this factor tends to favor preliminary approval.

### 2. Arm's Length Negotiation

The second factor requires that the proposed settlement has been negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Some such "subtle signs" of collusion include (1) when the agreement awards counsel a disproportionate share of the settlement; (2) when the parties agree to a "clear sailing" arrangement through which the defendants do not object to fee requests by class counsel; and (3) when the agreement reverts unclaimed funds to the defendant rather than to the class fund. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Plaintiffs assert that the settlement negotiations were "hard-fought," and involved the exchange of "multiple demands and counteroffers." Travis Decl. ¶ 9. Plaintiff's counsel received informal discovery from Defendants in August 2024, negotiated a settlement-in-principle by September 26, 2024, and worked over the next several months to draft the full Settlement at issue here. *Id.* ¶¶ 7–10.

The Court has reviewed the Settlement, and finds that it contains one warning sign of collusion identified in *In re Bluetooth*, 654 F.3d at 947: the inclusion of limited "clear sailing provisions" whereby Defendants will not object to a request for attorney fees and costs that do not exceed 25% of the Settlement Fund plus $25,000, and have agreed not to object to any request for a Class Representative Service Award greater than $4,000. Settlement ¶ 82 ("Defendants agree not to oppose Settlement Class Counsel's request for

a service award not to exceed [$4,000.00].”); *id.* ¶ 84 (“Defendants agree not to oppose Settlement Class Counsel’s request for an award of attorneys’ fees not to exceed 25% of the Settlement Fund and reimbursement of costs and expenses in an amount not to exceed $25,000.”). “The very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.” *In re Bluetooth*, 654 F.3d at 948 (internal quotation marks omitted). “Therefore, when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested.” *Id.* (internal quotation marks omitted).

The Settlement withstands this scrutiny and is free of the other “subtle signs of collusion” the Ninth Circuit identified in *Bluetooth*, 654 F.3d at 947. *First*, the Settlement does not appear to give Plaintiff’s counsel a disproportionate share of the settlement. The Settlement sets a ceiling of 25% of the Settlement Fund for attorney fees and a limit of $25,000 for litigation costs. Settlement ¶ 52. A 25% attorney fee award has been “generally held to be ‘reasonable’” by the Ninth Circuit in class action settlements. *In re Easysaver Rewards Litig.*, 906 F.3d 747, 758 (9th Cir. 2018). Moreover, the finality of the Settlement is not conditioned on either the attorney fees or the Service Award. Settlement ¶¶ 83, 85), and the Settlement contemplates Plaintiff filing a motion for approval of the attorney fees and the Service Award (*id.* ¶¶ 82, 84).[7] *Second*, the

---

[7] Given the existence of the clear sailing provisions in the Settlement, the Court has scrutinized the attorney fee provisions and will give careful attention to Plaintiff’s anticipated motion for approval of attorney fees. *See In re Bluetooth*, 654 F.3d at 948. As Plaintiff anticipates, such a motion must “make clear, the 25% sought is reasonable as a percentage of the fund and is also commensurate with the lodestar incurred in this matter,” and “Class Members will have an opportunity to comment or object to the fee petition.” Doc. # 37-1 at 13. “The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case.” *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). This benchmark can be adjusted depending on “(1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) counsel’s efforts,

Settlement does not contain a reversionary clause where unclaimed funds would revert to the defendant. Under the Settlement, if not all the funds are claimed, the Settlement Administrator is empowered to increase the pro rata distribution to class members who submitted a valid Cash Compensation claim (Settlement ¶ 49), and if there is any balance remaining after the completion of the claims process the Settlement contemplates a cy pres distribution subject to Court approval (*id*. ¶ 50).

Finding no other apparent sign of collusion other than the clear sailing provisions, the Court finds that this factor is neutral in determining whether it will grant preliminary approval. This factor may support final approval depending on the documentation provided in support of Plaintiff's counsel's motion for attorney fees and costs and for a Class Representative Service Award. *See In re Bluetooth*, 654 F.3d at 950 (noting that upon remand the district court may uphold the settlement notwithstanding the presence of all three of the *In re Bluetooth* warning signs).

### 3. Adequacy of the Relief

The third factor requires the court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The Court considers these factors in turn.

#### a. Costs, Risks, and Delay of Trial and Appeal

In assessing this factor, "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "The amount offered in settlement is

---

experience, and skill; and (5) awards made in similar cases." *Lusk*, 2019 WL 7048791, at \*9. "A court may also cross-check its percentage calculation against the lodestar method to determine the reasonableness of the award." *Id.*

generally considered to be the most important consideration of any class settlement." *Grady v. RCM Techs., Inc.*, 671 F. Supp, 3d 1065 (C.D. Cal. 2023) (citation omitted). In determining whether the amount offered in settlement is fair, courts should "compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." *Litty v. Merrill Lynch & Co., Inc.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (internal quotation marks and citation omitted). However, "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted). "Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan*, 310 F.R.D. at 611.

Here, the amount offered in Settlement is $435,000. Settlement ¶¶ 38, 42–46. Plaintiff calculates the maximum recovery of successful litigation as approximately $3.2 to $5.2 million,[8] meaning the Settlement has a "per-person value of . . . roughly 13% to 8% of the total potential maximum recovery." Doc. 37-1 at 24. This percentage recovery is in line with other class actions settlements where preliminary approval was granted. *See, e.g.*, *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (noting that 8% recovery rate was "especially low," but granting preliminary approval provided plaintiffs explain at final approval why the "recovery is warranted based on the circumstances of this case"); *Millan*, 310 F.R.D. at 612 n.10 (noting that a recovery of "approximately six percent . . . would not be

---

[8] Defendants' Notice of Removal asserts that the total amount in dispute exceeds $5 million. Doc. # 1 at 5–8, ¶¶ 12–20. As the Ninth Circuit has stated, this amount "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). The Court finds that this estimate is of limited value in assessing the maximum recovery of successful litigation.

outside the realm of possible approval considering the possible difficulties in Plaintiff's proof of this case").

Plaintiff's calculation of the maximum recovery contains gaps and offers limited value to the Court. "[D]amages calculations offered to demonstrate the fairness of a proposed settlement must be substantiated with detailed, reasoned analysis that explains how the defendant's maximum potential exposure has been calculated." *Grady*, 671 F. Supp. 3d at 1075. Plaintiff's estimate uses Defendants' unsworn assertion that there are approximately 4,500 class members and Plaintiff's assertion that successful litigation could end with approximately $20/month recovery for each class member over a limitations period of three to five years. Doc. # 37-1 at 23-24. Plaintiff derived the $20/month recovery figure from the monthly cost of credit monitoring—a form of relief often sought in data breach cases—as estimated in *Morales v. Conifer Revenue Cycle Sols., LLC*, No. 2:23-CV-01987-AB-AGR, 2023 WL 5236729, at *3 (C.D. Cal. Aug. 15, 2023). There, the Court determined that the CAFA $5,000,000 amount-in-controversy jurisdictional requirement was satisfied based in part on a finding that two months of credit monitoring cost $59.90 from TransUnion and $24.90 from Equifax. *Id*. at 23. Plaintiff's estimated maximum recovery calculation is of limited value considering that (1) credit monitoring is just one form of relief sought in this litigation; (2) the calculation is based in part on Defendants' unsupported assertion about the number of class members; and (3) the estimated monthly cost for credit monitoring was obtained from a single case (*Morales*) that estimated the cost of credit monitoring services for two months only and in a different context than approval of a class settlement. While not fatal to obtaining preliminary approval, Plaintiff's calculation of the maximum possible recovery must be more robust and detailed to obtain final approval.

Although Plaintiff's estimate of the maximum potential recovery lacks supporting documentation and excludes certain forms of relief sought by the Class, it appears that the primary obstacle to assessing the maximum recovery of successful litigation is the uncertainty and risk of continued litigation. As Plaintiff observes, "[e]stimating the likely

maximum recovery . . . is challenging, especially given that—to counsel's knowledge—
no data breach class actions have reached a verdict." Doc. 37-1 at 23. Indeed, "data-
breach litigation is an actively developing field of the law where much of the legal
landscape is still shifting and unsettled." *In re Anthem, Inc. Data Breach Litig.*, No. 15-
MD-02617-LHK, 2018 WL 3960068, at *11 (N.D. Cal. Aug. 17, 2018)). Plaintiff points
out several other risks attendant with pursuing further litigation in this case, such as a
potential challenge to lack of standing (Doc. 37-1 at 20–21) and the cost and complexity
of determining what constitutes reasonable security protocols to prevent a cybersecurity
breach (*id*. at 21). These risks are well documented in other data breach cases and are
likely to pose challenges for Plaintiff in this case. *See, e.g.*, *Riordan v. W. Digital Corp.*,
No. 5:21-CV-06074-EJD, 2022 WL 2046829, at *4 (N.D. Cal. June 7, 2022) (dismissing
data breach class action for lack of Article III standing); *In re Sony Gaming Networks &
Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (granting
motion to dismiss UCL, FAL, and CLRA claims in data breach case for lack of statutory
standing, finding that "heightened risk of identity theft, time and money spent on
mitigation of that risk, and the property value in one's information, do not suffice as
injury in the UCL, FAL, and/or the CLRA"); *In re Linkedin User Priv. Litig.*, 309 F.R.D.
573, 587 (N.D. Cal. 2015) ("Continued litigation would thus involve significant fact and
expert discovery into, among other things, technical issues such as what constitutes
standard industry security practices and whether LinkedIn followed such standards, as
well as summary judgment briefing on those questions.").

To assist the Court in evaluating the Settlement's value, Plaintiff's counsel has
compiled a list of comparable data breach class settlements approved by federal courts in
California and other jurisdictions. Doc. # 37-1 at 22–23. In each of these cases, the total
value of the settlement divided by the number of class members was significantly lower
than what the Settlement provides here; the exemplars provided by Plaintiff range from
an average value per class member of $1.31 (*Cochran v. Kroger Co.,* No. 5:21-cv-01887
(N.D. Cal.)) to $55.46 (*Alma Fidela Cercas v. Ambry Genetics Corp.*, No. 8:20-cv-00791

(C.D. Cal.)). This comports with the Court's observations about other data breach settlements. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *10 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) (finding a class action settlement in a multiple data breach case that established a $117.5 million fund for a class size of 194 million in addition to other relief was "fair, adequate, and reasonable, but unremarkable"); *Anthem, Inc.*, 2018 WL 3960068, at *10 ("Whether one looks at absolute or per-capita numbers, a settlement fund of $115 million for approximately 79.15 million class members is significant."). Using the same metrics the average value per class member here is $96.67. Doc. # 37-1.[9]

The Court finds that the Settlement avoids the significant risks and costs of continued litigation in favor of a resolution that provides greater per-capita value than comparable data breach class action settlements. Accordingly, this factor weighs in favor of granting preliminary approval.

### b. *Effectiveness of Proposed Method of Distribution*

The Court next considers the method for processing claims to ensure the proposed method facilitates filing legitimate claims. "The purpose of developing a plan of allocation is to devise a method that permits the equitable distribution of limited settlement proceeds to eligible class members." *In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297, 341 (E.D.N.Y. 2010). As with the settlement itself, "a plan of allocation of settlement proceeds in a class action . . . must be fair, reasonable and adequate." *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (citation omitted). Generally, "the adequacy of an allocation plan turns on whether counsel has properly apprised itself [*sic*] of the merits of all claims, and whether the proposed apportionment is

---

[9] The Court uses this figure for comparison purposes only. The actual average value provided to each class member is likely to be lower since this calculation does not subtract the attorney fees, litigation costs, and service award before dividing by the number of class members.

fair and reasonable in light of that information." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 52 (E.D.N.Y. 2010).

The Settlement provides that Settlement Class Members may submit a Claim Form to the Settlement Administrator electronically or by mail. Settlement ¶ 54. A Settlement Member may seek actual out-of-pocket losses up to a total of $2,000 per claimant, twenty-four months of credit monitoring services, and $50.00 in cash compensation. *Id.* ¶¶ 48–49. The Out-of-Pocket Losses and Cash Compensation benefits are subject to pro rata increase or decrease depending on the number of claims and settlement costs. *Id.* ¶¶ 48–49. The Settlement Administrator determines the relief to provide each claimant, and the Settlement provides for a process to cure deficiencies and appeal of the Settlement Administrator's decision. *Id.* ¶¶ 54–56. The Settlement Administrator provides the Parties with an accounting of all approved benefit claims before providing payment to Settlement Class Members. *Id.* ¶ 56. Plaintiff's proposed claims form suggests that Settlement Class Members can select a payment method from common third-party online payment platforms (PayPal, Venmo, or Zelle), a Virtual Prepaid Card, or a physical check. *See* Settlement Exh. B [Doc. #37-3 at 26]; *id.* Exh. D [Doc # 37-3 at 46]. The Settlement includes provisions for addressing returned checks, voided checks, and deceased Settlement Class Members. Settlement ¶¶ 58–60.

The distribution plan provides greater compensation to those who incurred out-of-pocket losses from the Cybersecurity Incident. Given the difficulty of establishing standing based on future harm in similar cases, these Settlement Class Members likely have stronger claims, making it fair for their recovery to exceed that of those alleging only future harm. *See Riordan*, 2022 WL 2046829, at *4 (granting motion to dismiss for lack of Article III standing where plaintiffs had not alleged that "their personal information was stolen or that any harm has resulted from the breach"). The Court finds that the method of distribution is generally adequate and weighs in favor of granting preliminary approval of the Settlement.

*c.  Attorney Fees*

The Court next considers the terms of any proposed award of attorney fees, including timing of payment. Fed. R. Civ. P. 23(e)(2)(C)(iii). At the preliminary approval stage, "the court should assess the reasonableness of the attorney's fee award because an inordinate fee may be the sign that counsel sold out the class's claims at a low value in return for the high fee." *Lusk v. Five Guys Enters. LLC*, 2019 WL 7048791, at *8 (E.D. Cal. Dec. 23, 2019) (internal quotation marks and citation omitted). As discussed above, in considering the proposed award of attorney fees, the Court must scrutinize the Settlement for "subtle signs" that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (internal quotation marks and alterations omitted).

As discussed above, the Settlement does not grant Plaintiff's counsel a disproportionate share, contains no reverter clause, and requires counsel to seek Court approval—and allow input from Settlement Class Members—before any award of fees or costs. *See* Section III.B.2 above; Settlement ¶ 84; Doc. # 37-1 at 13. The finality or effectiveness of the Parties' Settlement does not depend on the amount or timing of attorney fees and expense approved and awarded by the Court. Settlement ¶ 85. Although the Settlement contains a "clear sailing provision" where Defendants have agreed not to oppose a request for attorney fees greater than 25% or litigation costs greater than $25,000 (Settlement ¶ 84), the Settlement does not otherwise contain signs of collusion. Overall, the Court finds that the Settlement's treatment of attorney fees weighs in favor of preliminary approval.

### d. Release of Claims

The Court must also consider whether the Settlement contains an overly broad release of liability. *See* 4 Newberg on Class Actions § 13:15 (6th ed. 2024) ("Beyond the

value of the settlement, courts have rejected preliminary approval when the proposed settlement contain[s] obvious substantive defects such as . . . overly broad releases of liability."); A release of liability should only include claims based on an "identical factual predicate" as that underlying the claims in the settled class action. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *see, e.g.*, *Fraser v. Asus Comput. Int'l*, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class).

As noted above, the Settlement contemplates all members of the class releasing certain claims against the Defendants and other Release Parties. Settlement ¶¶ 27, 78–81. The Settlement defines "the Released Claims" as:

> "any and all claims, liabilities, rights, demands, suits, actions, causes of action, obligations, damages, penalties, costs, attorneys' fees, losses, and remedies of every kind or description—whether known or unknown (including Unknown Claims[10]), existing or potential, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that relate to or arise from any of the facts alleged in the Class Action Complaint concerning the Cyber Security Incident, regardless of whether such claims arise under federal, state and/or local law, statute, ordinance, regulation, common law, or other sources of law."

Settlement ¶ 26.

Since the Court denied Plaintiff's original motion for preliminary approval, Plaintiff has narrowed the definition of "Released Claims" and submitted several examples of similar language approved by courts in this district and other jurisdictions. *See* Doc. # 37-1 at 27 (citing cases). With the understanding that, under the Settlement,

---

[10] "Unknown Claims" as defined by the Settlement are "claims that could have been raised in the Action and that Plaintiffs, any member of the Settlement Class or any Releasing Party, do not know or suspect to exists, which, if known by him, here or it, might affect his, her or its decision to agree, object, or not object to the Settlement." Settlement ¶ 79. The Settlement includes an express waiver of Cal. Civ. Code § 1542. *Id*.

Settlement Class Members are not giving up any claims unrelated to those asserted in this action, the Court finds that the release provision adequately balances fairness to absent class members and recovery for the class with Defendants' business interest in ending this litigation. *See Fraser*, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

### e.  Agreements Required to Be Identified Under Rule 23(e)(3)

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Because the parties here filed no such statement, the Court considers this factor to be neutral.

\*\*\*

In total, the Court finds that the adequacy of the relief provided by the Settlement weighs in favor of granting preliminary approval.

### 4.  Equitable Treatment Among Class Members

Rule 23(e) requires examination of whether a proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id*., 2018 Advisory Committee Notes. The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted," *In Re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks omitted), and has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. *See id*. at 1165. Though the

-28-

Ninth Circuit has not set a benchmark, incentive awards in this Circuit typically range from $2,000 to $10,000 with courts treating $5,000 payments as presumptively reasonable. *See, e.g., In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (awarding $5,000 incentive awards to the class representatives, noting the awards were "consistent with the amount courts typically award as incentive payments," and citing other case examples within the Circuit); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in [the Northern] District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." (citations omitted)).

As noted above, the Settlement reasonably accounts for differences between the damages claimed by the Settlement Class Members and provides a clear process with which to assess the benefit claims. *See* Section III.B.3.b above. Also, the Settlement provides for a Service Award to Plaintiff of up to $4,000, subject to approval of the Court. Settlement ¶ 82. The finality or effectiveness of the Settlement does not depend on the amount or timing of the services award approved and awarded by the Court. *Id*. ¶ 83. Plaintiff has been involved in this litigation and has cooperated with counsel to reach the Settlement here. Travis Decl. ¶ 27. Plaintiff was not promised a service award and did not condition his representation on the expectation for a service award. *Id*. ¶ 28. The Court finds that the service award contemplated by the Settlement is reasonable, and the Settlement treats class members equitably. Thus, this factor weighs in favor of granting preliminary approval.

### 5. *Weighing the Factors*

Having weighed the factors above and reviewed the Settlement as a whole, the Court finds it likely that it will ultimately conclude the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B), 23(e)(2).

### C.    Class Notice and Notification Procedures

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. *See* Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005); *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted); *see also Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing[.]") (internal quotation marks omitted). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement but remain in the class. *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

Here, the parties have retained the class action notice and claims administration firm Angeion Group, LLC ("Angeion") to design and implement the class notice and

notice procedures in this case. *See* Declaration of Steven Weisbrot of Angeion Group Re: Proposed Notice Plan (Doc. # 37-5, "Weisbrot Decl.") ¶ 18.

Under the proposed notice plan, Defendants will provide Angeion with Settlement Class Member data to contact Settlement Class Members within seven days of the entry off a Preliminary Approval Order. Settlement ¶ 61; Weisbrot Decl. ¶ 20. For all Settlement Class Members with a valid email address, Angeion will email a Short Form Notice. *Id*. ¶¶ 21–27; Exh. A ("Short Form Notice").[11] For all Settlement Class Members for whom Angeion did not have an email address or whose Short Form Notice could not be delivered via email, Angeion will mail a copy of the Short Form Notice in a post card format with a returnable Claim Form. Weisbrot Decl. ¶ 29; Settlement Exh. B ("Postcard Notice"). Angeion will also supplement its effort to provide direct notice with a paid search campaign on Google aimed at driving Settlement Class Members who search for information about the lawsuit to a Settlement Website designed by Angeion. Settlement ¶¶ 40, 63; *Id*. ¶¶ 36. The Settlement Website provides Settlement Class Members with a Long Form Notice (Settlement Exh. C), Claim Form for requesting benefits (*id*. Exh. D), an Exclusion Form to opt-out of the Settlement (*id*. Exh. E), general information about the Settlement, the ability to review and download relevant Court documents, and a dedicated email address for any additional questions. Weisbrot Decl. ¶¶ 33–35; Settlement ¶ 63. Angeion will also provide a toll-free telephone hotline accessible 24 hours a day, 7 days a week for this case that will tell Settlement Class Members their rights and will allow Settlement Class Members to leave a voicemail requesting a a copy of the Long Form Notice, Claim Form, and/or Exclusion Form via U.S. Mail. Weisbrot Decl. ¶ 37; Settlement ¶ 63.

Plaintiff has provided copies of the template notice forms, Claim Form, and Exclusion Form discussed above as exhibits to the Settlement. Settlement ¶ 16, Exhs. A–

---

[11] The Weisbrot Decl. alternately refers to this notice as "Summary Notice" and "Short Form Notice."

E. Plaintiff has also provided Spanish version of each of these documents. *Id*. Exhs. F– J.[12] The Court has reviewed these forms and finds that they include sufficient detail and clarity to notify the class members of the Settlement. The Short Form Notice, Postcard Notice, and Long Form Notice include a summary of the nature of the action and the claims asserted in the operative complaint in plain terms. Settlement Exh. A [Doc. # 37-3 at 21–22]; *id* Exh. B [Doc. # 37-3 at 24], *id*. Exh. C [Doc. # 37-3 at 32]; *see also* Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii). Each also provides Settlement Class Members with the URL for the Settlement Website (which contains copies of all relevant Court documents and forms), relevant details about the Final Approval Hearing, details about the Settlement benefits, the toll-free telephone hotline, and at least general information about claiming benefits and opting out of the settlement with relevant deadlines. Settlement Exh. A [Doc. # 37-3 at 21–22]; *id*. Exh. B [Doc. # 37-3 at 22–26]; *id*. Exh. C [Doc. # 37-3 at 31–33, 35–42]

The Long Form Notice provides the definition of the class Settlement Exh. D [Doc. # 37-3 at 34]; *see also* Fed. R. Civ. P. 23(c)(2)(B)(ii) and provides a detailed explanation of the terms of the Settlement, including the amount of the Settlement Fund, the distribution of the Settlement Fund, the release of liability, the service award, and the proposed attorney fees and expenses. *See generally*, Settlement Exh. C. The Long Form Notice explains the Settlement Class Members' options under the Settlement: (1) they can remain in the class and submit a claim; (2) object to the settlement but still remain in the class (including by appearing through their own attorney); (3) exclude themselves from the settlement and pursue their claims separately against Defendants; or (4) do nothing. Settlement Exh. C [Doc. # 37-3 at 35-42]; *see also* Fed. R. Civ. P.

---

[12] Neither the Settlement nor the Weisbrot Decl. explains which class members should receive the Spanish versions of these forms. The Court finds that all class members should be given notice with both the English and the Spanish notice forms, and that both English and Spanish versions of the various exhibits to the Settlement should be available on the Settlement Website.

23(c)(2)(B)(iv)-(vi). Finally, the Long Form Notice explains the procedures for objecting to the Settlement and provides information about the Final Fairness Hearing. Settlement Exh. C [Doc. # 37-3 at 40].

In the Court's May 9, 2025 order denying without prejudice Plaintiff's motion for preliminary approval, the Court noted that Angeion "should provide an opt-out or exclusion form with the email and postcard notices." Doc. # 36 at 3. Plaintiff has provided this option for the Court's consideration, but Plaintiff and Angeion urge the Court to reconsider its position because (1) "emails with attachments often get flagged as spam or fraudulent," and including an attachment is expected to decrease the email delivery rate and (2) from Angeion's experience including the Claim Form and Exclusion Form in the same notice may lead Settlement Class Members to unintentionally opt out of the settlement; and (3) the Exclusion Form is too large to be included in a postcard format and would mean a more expensive first class envelope format that is likely to decrease the number of Settlement Class Members who open the envelope and read the notice. Weisbrot Decl. ¶¶ 24, 30. Having considered this additional information, the Court finds that including an opt-out or exclusion form with the email and postcard notices is not necessary and agrees that Plaintiff's proposed "Option 2" is preferable. See Doc. 37-1 at 11–12, 29.

Based on the foregoing, the Court finds no alternative method of distribution more practicable or more likely to provide reasonable notice to class members. The Court also finds that both the notice procedure and the content of the proposed notice forms constitute the best practicable notice and satisfy due process.

## IV.    CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiff's Motion (Doc. # 37) is GRANTED upon the terms and conditions set forth in this Order.

2.  The Court preliminarily certifies the Settlement Class, as defined by Paragraphs 33 and 71 of the Settlement (Doc. # 37-3 at 4, 12–13), for the purposes of settlement.

3.  The Court preliminarily appoints Plaintiff Daniel Lopez Jr. as class representative for settlement purposes.

4.  The Court appoints Ben Travis of Ben Travis Law, APC and Joshua Swigart of Swigart Law Group, APC as Class Counsel to act on behalf of the Settlement Class and the Settlement Class Representative with respect to the Settlement. The Court authorizes the Settlement Class to enter into the Settlement on behalf of the Settlement Class and the Settlement Class Representative, and to bind them all to the duties and obligations contained therein, subject to final approval by the Court of the Settlement.

5.  The Court preliminarily finds that the terms of the settlement are fair, reasonable, and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The Court approves the form, substance, and requirements of the proposed notice to the Settlement Class. The proposed manner of notice of the Settlement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.  The Court appoints Angeion as Settlement Administrator. The Settlement Administrator is directed to perform all tasks the Settlement requires.

8.  The Court approves the form and content of the proposed Long Form Notice, Short Form Notice, Postcard Notice, Claim Form, and Exclusion Form attached to the Settlement. The Parties and the Settlement Administrator may amend the notice documents as necessary to add dates and correct non-substantive aspects of the notice documents (e.g., typographical and/or clerical errors).

9.  Defendants shall provide notice of the Settlement to the appropriate federal and state officials, as required by the CAFA **no later than seven (7) days after this Order is issued**.

10. Angeion shall complete dissemination of the class notice, in accordance with the Settlement. *See* Settlement ¶¶ 17, 61–66. In disseminating this notice, Angeion shall provide both the Spanish and English versions of the notice documents to each class member. Angeion shall complete dissemination of the class notice no later than **thirty (30) days after entry of this Order.**

11. Plaintiff shall file a motion for attorney fees and costs, as well as any service award payment, no later than **forty-five (45) days after the entry of this Order**. This motion should be noticed for a hearing for the date and time of the final approval hearing set forth below.

12. Plaintiff shall, no later than **sixty (60) days after entry of this Order**, file and serve a motion for final approval of the Settlement. The motion shall be noticed for hearing for the date of the Final Approval Hearing set forth below.

13. Any class member who wishes to (a) object to the Settlement, including the requested attorney fees, costs and service award; or (b) exclude him or herself from the Settlement, must file his or her objection to the Settlement or request exclusion no later than **ninety (90) days from the entry of this Order** in accordance with the Settlement and this Order. *See* Settlement ¶¶ 17, 19, 21, 67–68.

14. All claims must be postmarked or submitted electronically within **one hundred and twenty (120) days from the entry of this Order**.

15. Plaintiff may file any replies to any objections at least **fourteen (14) calendar days before the Final Approval Hearing**.

16. Defendants may file and serve a memorandum in support of the final approval of the Settlement Agreement and/or in response to objections no later than **fourteen (14) calendar days before the Final Approval hearing**.

17. Any class member who wishes to appear at the Final Approval Hearing, either on his or her own behalf or through an attorney, to object to the Settlement, including the requested attorney fees, costs, or service award, shall, no later than **seven (7) calendar days before the Final Approval Hearing**, file with the Court a Notice of Intent to Appear at Final Approval Hearing.

18. A Final Approval Hearing is hereby set for **May 15, 2026 at 1:30 p.m.** in Courtroom 10B of the First Street Courthouse, 350 W. 1st Street, Los Angeles California 90012 to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney fees and costs to class counsel and service award to Plaintiff. The Court may postpone the Final Approval Hearing and will provide notice of any such postponement on the Settlement Administrator's website without further notice to Settlement Class Members.

19. All proceedings in this action, other than proceedings necessary to carry out or enforce the Settlement, are stayed pending the Final Approval Hearing and the Court's decision whether to grant final approval of the Settlement.

**IT IS SO ORDERED**

DATED: 12/4/25

_Cynthia Valenzuela_

HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE